UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DONNIE DELBERT KURZHAL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 3:13-cv-42 PPS |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Donnie Kurzhal appeals the Social Security Administration's decision to deny his application for disability insurance benefits. An administrative law judge found that Kurzhal was not disabled within the meaning of the Social Security Act. As explained in detail below, I find that the ALJ failed to adequately investigate Kurzhal's claim that he is illiterate. I will therefore remand this matter to the ALJ to fully and properly develop the administrative record.

**BACKGROUND**

Kurzhal applied for Disability Insurance Benefits and Supplemental Security Income in December 2009. He alleged an onset date of November 1, 2008, the day he was laid off from his job as a masonry laborer and supervisor. Kurzhal's primary ailments are fibromyalgia, osteoarthritis, and depression. He also claims to be illiterate.

Kurzhal began complaining of joint pain in April 2008. The pain was severe enough that he had trouble sleeping at night. His primary care physician determined that Kurzhal had diffuse arthritis, arthralgias (joint pain), and myalgias (muscle pain) stemming from his long history of

construction work [R. 370].  The doctor prescribed anti-inflammatories and noted that he would consider referring Kurzhal to a rheumatologist if Kurzhal's pain did not abate.  [*Id.*]

In May 2009, about five months after his alleged disability onset date, Kurzhal underwent successful total knee replacement surgery on his right knee [R. 255].  In addition to the knee, Kurzhal was still experiencing severe joint pain at this time, so his physician went ahead and referred him to a rheumatologist.  The rheumatologist, Dr. Balog, eventually diagnosed Kurzhal as having fibromyalgia in July 2009 [R. 320].  Dr. Balog was reluctant to prescribe narcotics for fibromyalgia, so instead attempted to control Kurzhal's pain with a mix of antidepressants[1] and non-narcotic pain medication [*Id.*].  Dr. Balog's regimen did not seem to work as Kurzhal continued to complain of severe pain [R. 318].

Kurzhal was eventually referred to Dr. Stephen Ribaudo for pain management [R. 394].  Dr. Ribaudo examined Kurzhal in February 2010 and determined he had bilateral rotator cuff disease, thoracolumbar spondylosis (back pain), bilateral greater trochanteric bursitis (hip pain), osteoarthritis in both knees, and bilateral plantar fasciitis [*Id.*].  Dr. Ribaudo prescribed oxycodone and a different antidepressant.  This proved effective at reducing Kurzhal's pain [R. 396, 460-65].

In addition to fibromyalgia and osteoarthritis, Kurzhal has also claimed that he is illiterate.  Kurzhal underwent a literacy evaluation at the Literary Council of St. Joseph County on November 16, 2010.  According to the assessment, Kurzhal is not able to read or write [R. 87-88].  He had difficulty reading even simple words like "today, does, three, from, under, began,

---

[1] Antidepressants are commonly used to treat fibromyalgia.  *See, e.g.,* Fibromyalgia Medications, http://www.webmd.com/fibromyalgia/guide/fibromyalgia-treatment-medications-that-can-and-cant-help

name, there, could and again" [*Id*.].  Testing indicated that Kurzhal may have adult dyslexia [*Id*.].  Dr. Ribaudo came to the same conclusion, noting on a couple of occasions that Kurzhal did not know how to read and write and probably had a learning disability [R. 460-61, 468].

Kurzhal's disability claim was denied initially on March 20, 2010, and upon reconsideration on June 3, 2010.  Kurzhal requested a hearing, which took place on August 4, 2011.  At the hearing, Kurzhal testified that he was unable to do even basic activities because of his pain [44-49].  He also testified that he was completely unable to read and write [R. 41].  His sister, who he lives with, testified that Kurzhal was largely unable to function by himself because of his pain and depression [R. 51-52].  A vocational expert also testified as to the various jobs available when given different hypotheticals by the ALJ.

The ALJ issued a decision denying benefits on August 18, 2011 [R. 16-28.]  The ALJ employed the standard five-step analysis.  At step one, the ALJ confirmed that Kurzhal had not engaged in substantial gainful activity since his application date.  At step two, the ALJ found Kurzhal suffered severe impairments of fibromyalgia and osteoarthritis.  At step three the ALJ found that Kurzhal's conditions did not satisfy any listed impairment.  At step four, in analyzing Kurzhal's residual functional capacity, the ALJ found that Kurzhal could perform light work with: no climbing of ladders, ropes, or scaffolds; no exposure to unprotected heights, but the occasional balancing, stooping, crouching, crawling, kneeling, and climbing of stairs and ramps.  She also determined that Kurzhal was not illiterate, but rather had a limited education.  At step five, the ALJ found that Kurzhal could not perform past relevant work but that there were a sufficiently significant number of jobs in the national economy that he could perform.

The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Kurzhal timely sought review of that decision by filing this case.

## DISCUSSION

My review of an ALJ's decision to deny social security benefits is limited to determining whether the decision is supported by substantial evidence. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Id.* In other words, the ALJ's decision, if supported by substantial evidence and reached under the correct legal standard, will be upheld even if reasonable minds could differ as to the appropriate conclusion. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). It is not my job to re-weigh evidence, choose among conflicting versions of events, decide questions of credibility, or substitute my own judgment for the ALJ's. *Young*, 362 F.3d at 1001.

To receive disability benefits under the Social Security Act, a claimant must be "disabled" as defined by the Act. 42 U.S.C. § 423(a)(1)(E). A claimant qualifies as disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Moreover, a claimant's physical or mental impairment or impairments must be of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

Kurzhal objects to the ALJ's decision on three grounds:

>1. The ALJ failed to properly assess Kurzhal's ability to read and write.
>
>2. The ALJ failed to give controlling weight to the opinion of Dr. Ribaudo that Kurzhal was disabled.
>
>3. The ALJ failed to properly consider Kurzhal's fibromyalgia.

[DE 11 at 10-15.]

Of these, the literacy issue looms largest. That is because, according to the Social Security Administration's Medical-Vocational Guidelines, if Kurzhal is illiterate and limited to light work, he became disabled in January 2011 when he turned 50 years old and became an "individual closely approaching advanced age." 20 C.F.R. pt. 404, subpt P, App.2, § 2020.10. The guidelines recognize that there are very few light work jobs available to older individuals who can't read or write. *See Glenn v. Sec'y of Health and Human Services.*, 814 F.2d 387, 389 (7th Cir. 1987)

The SSA regulations provide that an individual is considered illiterate if the person cannot read or write a simple message. 20 C.F.R. § 404.1564(b)(1). The ability to sign one's name is not determinative of literacy, nor is the amount of formal schooling a person has had. *Id.*; *Glenn*, 814 F.2d at 389-90. Nevertheless, literacy is a low bar. The essential questions is whether the applicant is so deficient in ability to read and write that she cannot obtain even an unskilled job. *Glenn*, 814 F.2d at 391 (affirming finding that claimant was literate despite being able to read and write only the simplest messages).

The next education category listed in the regulations is marginal education, which means the "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs." 20 C.F.R. § 404.1564(b)(2). The next step up on the continuum is the

category of "limited education" and this is the category that the ALJ determined that Kurzhal fit into. A finding of limited education means the claimant has some ability in reasoning, arithmetic and language skills, but not enough to do most of the more complex job duties needed in semi-skilled or skilled jobs. 20 C.F.R. § 404.1564(b)(3). The guidelines associate limited education with a seventh-grade through eleventh-grade level of formal education, but, again, the amount of formal education is not determinative.

I cannot determine based on the record whether Kurzhal is illiterate as defined in the regulations. There is certainly evidence that he is. Kurzhal testified that he is completely illiterate; he said could not read or write at all [R. 41]. He also testified that, although he attended school through tenth grade, he was in special education classes the whole time [*Id.*]. In addition, there is the Literacy Council assessment, which concluded Kurzhal basically could not read or write at all. He struggled to read even simple words like "does" and "three" [R. 87-88]. What's more, Dr. Ribuado noticed the same thing, concluding that Kurzhal "does not functionally know how to read and write" [R. 460]. Finally, Kurzhal's ex-wife reported that he was never able to follow written instructions well [R. 198].

On the other hand, as the ALJ pointed out, Kurzhal reported that he was able to pay bills, use a checkbook and manage a savings account [R. 217]. The evidence regarding his education is inconsistent, as Kurzhal initially reported that he did not attend any special education classes and his school records don't make clear how much special education he had [R. 171, 240-42]. At one time, Kurzhal reported to a doctor that he needed glasses for reading [R. 256]. But whether he was just covering up his illiteracy with this vague reference is not at all clear. In addition, he also answered "sometimes" to the ALJ's question "[d]o you watch TV or read books

6

or anything?" [R. 48]. Remarkably, the ALJ interpreted this answer as meaning he sometimes reads books [R. 24]. But the question was a compound one. When Kurzhal said "sometimes" was he referring to watching TV or reading (or both)? Finally, the ALJ pointed out that Kurzhal did not bring up his alleged illiteracy until late in the appeals process.

In my view, there is just not enough evidence in the record to support the conclusion that Kurzhal has a limited education. Once Kurzhal raised the issue of illiteracy, the ALJ had an obligation to develop a complete record. *McCormick v. Astrue*, No. 1:11-cv-00328, 2012 WL 1886508, at *7 (N.D. Ill. May 23, 2012) *citing Yourek v. Barnhart*, 334 F. Supp. 2d 1090, 1093 (N.D. Ill. 2004). The ALJ could not simply rely on the fact that Kurzhal completed the tenth grade, because, as the Seventh Circuit has pointed out, Kurzhal's formal education may not have taken. *Glenn*, 814 F.2d at 390. Rather, she had an obligation to determine what exactly Kurzhal was capable of. In similar cases, ALJs have accomplished this by having the claimant attempt to spell words or read simple passages at the hearing. *See id.* at 391 (claimant attempted to demonstrate his illiteracy by reading a recipe); *McCormick*, 2012 WL 1886508 at *7-8 (claimant was asked to spell simple words and about his ability to read passages in the newspaper); *Cole v. Apfel*, 98 C 6735, 2000 WL 290432, at *4 (N.D. Ill. March 17, 2000) (noting that ascertaining the claimant's literacy "would have involved a simple task such as asking him to read aloud a short news article, or asking him to write a note").

In this case, the ALJ did not ask for a demonstration. She simply asked if Kurzhal if he could read or write. When he answered no, she asked one more question and then let the matter drop [R. 41]. Sometimes, of course, it may not be necessary to delve as deeply into the claimant's literacy at the hearing. But this is not a case where the documentary record provided

substantial evidence of literacy. The record is a mixed bag with strong evidence, in the form of the Literacy Council assessment, supporting Kurzhal's argument he is illiterate, and spottier evidence, in the form of the school records and answers to ambiguous questions, supporting the case against. Nor is this a case like *Glenn*, where it is possible to infer literacy from the claimant's former work. No such inference is possible here. Kurzhal worked as a mason in the construction industry. His job likely required little, if any, reading or writing ability. Given the circumstances, the ALJ should have taken the opportunity at the hearing to more fully explore Kurzhal's ability to read and write.

Another problem along the same lines is the ALJ failed to explain how she determined Kurzhal fell into the limited education category as opposed to the lower, marginal education category. The ALJ explained how she determined Kurzhal was not illiterate, but did not take the next step and provide a "logical bridge" between her conclusion that he had a limited education and the evidence she summarized earlier in her opinion. *See Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998) ("[the ALJ's] opinion fails to build a bridge from the evidence to the conclusion and is thus analytically inadequate – in a word, unreasoned – we cannot uphold his decision."); *Truckey v. Astrue*, No. 2:10 cv 447, 2011 WL 5101883 (N.D. Ind. Oct. 27, 2011) (remanding for ALJ's failure to build a logical bridge to his conclusion that the claimant had a limited education).

Accordingly, the ALJ's finding of literacy is reversed. On remand, the question of Kurzhal's literacy should be fully developed and resolved. Because remand is necessary on this issue, I need not address Kurzhal's other arguments. *Eskew v. Astrue*, 462 Fed. App'x. 613, 615 (7th Cir. 2011) (given the court's remand on one of claimant's arguments, it "need not address

[her] remaining arguments"); *Fike v. Astrue*, 2012 WL 1200670, at *10, n.6 (N.D. Ind. Apr. 10, 2012). On remand the ALJ should revisit Kurzhal's other arguments as appropriate.

## CONCLUSION

For the reasons stated above, this cause is **REMANDED** for further proceedings consistent with this order.

**SO ORDERED.**

ENTERED: January 27, 2014        s/ Philip P. Simon
                                                        PHILIP P. SIMON, CHIEF JUDGE
                                                        UNITED STATES DISTRICT COURT